Thomas E. LUTTENEGGER, Susan M. Luttenegger, and Jerome J. Carpenter, on Behalf of Themselves and All Persons Similarly Situated, Appellees,

v.

CONSECO FINANCIAL SERVICING CORPORATION, f/k/a Green Tree Financial Servicing Corporation, and Green Tree Mortgage Services, Appellants.

No. 02–0206.

Supreme Court of Iowa.

Nov. 13, 2003.

Richard K. Updegraff, John D. Hunter, and Miranda L. Hughes of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellants.

Mitchell Taylor of Cray, Goddard, Miller & Taylor, L.L.P., Burlington, Wood R. Foster, Jr., Jordan M. Lewis, and Ryan M. Pacyga of Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, Minnesota and Richard J. Bell of Bell Law Office, Mt. Pleasant, for appellees.

LAVORATO, Chief Justice.

The defendants appeal from a district court ruling certifying the plaintiffs' suit as a class action. After initially denying the defendants' applications for interlocutory appeal concerning the district court's denial of the defendants' two motions for partial summary judgment, we granted the applications while the appeal was pending. The defendants contend the district court erred in not granting their motions for partial summary judgment. They also contend the district court abused its discretion in certifying the suit as a class action. We reverse the rulings on the two partial summary judgment motions, we reverse in part and affirm in part the class certification ruling, and we remand the case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

On July 10, 2000, Thomas E. Luttenegger and Susan M. Luttenegger filed a class action suit against Conseco Financial Servicing Corporation (f/k/a Green Tree Financial Servicing Corporation) and Green Tree Mortgage Services (hereinafter referred to collectively as "Conseco"). The suit sought monetary and injunctive relief based on Conseco's alleged violations of Iowa Code section 535.8 (1999). Following an order granting the plaintiffs' motion to amend, the plaintiffs filed an amended class action petition, adding several plaintiffs and alleging violations of Iowa Code sections 535.8 and 537.2501. In addition to the statutory damages claims, the plaintiffs alleged breach of contract and unjust enrichment claims.

On April 9, 2001, the district court entered a consent order, severing the plaintiffs' case into two separate cases: one involving plaintiffs whose claims were required to go to arbitration and one involving the case now before this court. The remaining plaintiffs—the Lutteneggers, Jerome J. Carpenter, Marvin G. Hulett and Sheila M. Hulett—were granted leave to file a second amended class action petition.

The second amended class action petition asserted the class consisted of two subclasses: a consumer loan subclass and a home acquisition loan subclass. The petition alleged that on November 25, 1997, the Lutteneggers as representatives of the consumer loan subclass entered into a consumer loan transaction with Conseco, secured by residential real estate owned by the Lutteneggers. The petition further alleged that Conseco charged the Lutteneggers the following settlement amounts not permitted by Iowa Code section 537.2501:

1. a loan origination fee of $766,

2. a loan processing fee of $200, and

3. a courier fee of $6.

In addition, the second amended class action petition alleged that Carpenter and the Huletts separately entered into home acquisition loans with Conseco in which they were required to pay charges not permitted by Iowa Code section 535.8. The alleged unlawful charges Carpenter was required to pay included:

1. a loan discount fee of $3,417,

2. a processing fee of $200, which when combined with the one percent loan origination fee of $1,139, exceeded the maximum origination/processing fee allowed under Iowa Code section 535.8(2),

3. a closing fee of $300, and

4. a fee for title insurance to "Glen Allen" for $560.

The alleged unlawful charges the Huletts were required to pay included:

1. a processing fee of $200, which when combined with the two percent loan origination fee of $1236 exceeded the maximum origination/processing fee allowed under the terms of Iowa Code section 535.8(2),

2. a four percent loan discount fee in the amount of $2,472,

3. a closing fee in the amount of $100,

4. a fee for an abstract or title search in the amount of $250, and

5. a fee for title insurance in the amount of $195.

The second amended petition alleged that Conseco, in closing consumer loans with the Lutteneggers and consumer loan subclass members, collected loan charges limited or prohibited by Iowa Code section 537.2501. And that by the terms of Iowa Code section 537.5201, the Lutteneggers and consumer loan subclass members were entitled to recover the unlawful charges collected.

In addition, the second amended petition alleged that Conseco, in closing Iowa residential real estate loans with Carpenter, the Huletts, and home acquisition loan subclass members, collected loan charges limited or prohibited by Iowa Code section 535.8(2), (3). And that pursuant to this statute, the two plaintiffs and subclass members were entitled to recover the unlawful charges.

The second amended petition also alleged a breach of contract theory as to

both subclasses based on the alleged unlawful charges.

On June 1 Conseco filed a motion for partial summary judgment, asserting that the disputed charges as to the Lutteneggers' consumer loan were allowable under Iowa Code chapter 537. Specifically, Conseco contended even though the loan origination fee, processing fee, and courier fee were not specifically listed in section 537.2501, the fees were permitted under section 537.2401 as part of the finance charge, as that term is defined in section 537.1301(19). The plaintiffs resisted the motion. The district court denied Conseco's partial summary judgment motion. Following the district court's denial of Conseco's Iowa Rule of Civil Procedure 1.904(2) (formerly rule 179(b)) motion, this court denied Conseco's application for interlocutory appeal.

On September 14 the plaintiffs filed a motion for class certification, seeking certification of the two subclasses. The plaintiffs alleged the proposed subclasses met the requirements of numerosity, commonality, and fair and efficient adjudication. *See* Iowa R. Civ. P. 1.262(2)(*a*), (*b*). The plaintiffs also asserted the representative parties would protect the interests of the class. *See* Iowa R. Civ. P. 1.262(2)(*c*). Conseco resisted the motion.

On December 3 Conseco filed a motion for partial summary judgment as to Carpenter and the Huletts. In the motion, Conseco asserted that (1) the Huletts' loan was not governed by Iowa Code section 535.8, (2) Carpenter was not charged excessive loan origination or processing fees, and (3) Carpenter was not charged an improper closing fee. Conseco's motion did not challenge Carpenter's claim that the loan discount fee and title insurance fee were unlawful. The plaintiffs conceded the dismissal of the Huletts' claim in its

entirety and conceded the motion as to Carpenter's claim that Conseco charged an impermissible origination and processing fee, but resisted the motion as to the closing fee.

The district court heard arguments on the motion for partial summary judgment and the motion for class certification at the same time. On January 18, 2002, the court filed separate rulings on both motions. The court denied Conseco's motion for partial summary judgment concerning the closing fee that Conseco charged Carpenter. The court ruled that the HUD–1 form required at closing and containing the closing fee was not a written agreement between the parties. For that reason the court concluded the HUD–1 form could not serve as evidence that the parties had agreed to the payment of a closing fee, as required by Iowa Code section 535.8(2)(a) (lender may collect a closing fee that is agreed to in writing by the lender and the borrower). The court also ruled that because Conseco's motion did not address Carpenter's claims involving the loan discount fee of $3,417 and title insurance fee of $560, its ruling neither addressed nor affected those two claims.

The district court granted the plaintiffs' motion for class certification. The court concluded: (1) the numerosity requirement was met, (2) the common question of whether Conseco violated section 535.8 or 537.2501 in making charges to Iowa borrowers predominated over individual questions, (3) certification promoted fair and efficient adjudication of the controversy, and (4) the plaintiffs have or can acquire the financial resources necessary to assure the interests of the class will not be harmed, and the plaintiffs' attorneys would adequately represent the class.

In its ruling, the court defined the "consumer loan subclass" as:

All persons who entered into a "consumer loan" with defendants as the term is defined by Iowa Code section 537.1301(14) where:

a. The real property by which the loan was secured was in Iowa;

b. The majority of the funds borrowed was not used to acquire a home to be occupied by the borrower;

c. The defendants collected loan charges not enumerated in Iowa Code section 537.2501;

d. The loan's last installment has not yet been paid, or was paid after November 1, 1999; and

e. The promissory note related to the loan does not include an arbitration clause.

The court defined the "home acquisition loan subclass" as:

All persons who entered into a "home acquisition loan" transaction (as the term is defined by Iowa Code section 535.8(1)) in which:

a. The real property by which the loan is secured was in Iowa;

b. The defendants collected closing fees not enumerated in Iowa Code section 535.8(2)(a) and (b);

c. The charges (or interest on the charges) were collected by Conseco after July 1, 1990; and

d. The promissory note related to the loan does not include an arbitration clause.

The court approved the Lutteneggers to represent the consumer loan subclass and Carpenter to represent the home acquisition loan subclass. The court indicated that the plaintiffs would be allowed to pursue the following: (1) monetary damages, refunding all charges Conseco improperly collected, together with restitution of all interest improperly collected on such charges; (2) an injunction requiring Con-

seco to cease and desist from collecting unauthorized charges and to recalculate future monthly payments on all loans so as to remove interest payments attributable to improper closing charges; and (3) attorney fees and costs.

Conseco filed an application for interlocutory appeal of the district court's second partial summary judgment ruling. Conseco also appealed the class certification ruling. Later, the plaintiffs filed a motion to strike portions of Conseco's brief concerning the class certification issue. The plaintiffs contended that Conseco included in its proof brief improper and immaterial matters as to the two district court partial summary judgment rulings. This court denied Conseco's application for interlocutory appeal and denied the plaintiffs' motion to strike.

Following oral arguments, we reconsidered our rulings denying the applications for interlocutory appeal, granted the applications, allowed the parties time to brief the summary judgment issues, and heard oral arguments on those issues.

## II. The Issues.

Conseco raises two issues. It contends the district court erred in denying its two motions for partial summary judgment. Conseco also contends the district court abused its discretion concerning its class certification ruling. We first consider whether the district court erred concerning its partial summary judgment rulings. We then consider whether the district court abused its discretion in certifying the suit as a class action.

## III. The Two Partial Summary Judgment Rulings.

**A. Scope of review.** Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981. There is no fact issue if the only dispute concerns the legal consequences flowing from the undisputed facts. *Hegg v. Hawkeye Tri–County REC*, 512 N.W.2d 558, 559 (Iowa 1994). Our review is therefore limited to whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Id.*

The plaintiffs challenge a variety of fees that Conseco charged at the closing of consumer and home acquisition loans. These fees, the plaintiffs contend, violate Iowa Code section 537.2501, which is a part of Iowa's version of the Uniform Consumer Credit Code [hereinafter U3C] and Iowa Code section 535.8(2), (3), which governs charges regarding home acquisition loans.

Conseco contends the district court misinterpreted Iowa's Uniform Commercial Code [hereinafter IU3C] when it concluded that the IU3C forbids lenders from charging fees not expressly listed in the IU3C. In support of its contention, Conseco argues that the district court should have treated those fees as components of the "finance charge" subject to a general 21% rate ceiling.

Conseco also contends the district court erred when it concluded that the HUD–1 form did not qualify as a written agreement between the borrower, Carpenter, and the lender, Conseco, concerning the borrower's payment of a closing fee pursuant to Iowa Code section 535.8(2)(*a* ).

**B. The alleged IU3C violations.** Some background would be helpful in understanding this issue. The National Conference on Uniform Laws adopted the U3C in 1968 and followed up with a new version in 1974. Iowa enacted the 1974

version "in substantially that of the Committee's Working Redraft No. 4 or 5." Unif. Consumer Credit Code (1974) 7 U.L.A. Prefatory Note at 89 (2002) [hereinafter U3C(74) ]; *see also* 1974 Iowa Acts ch. 1250 (codified at Iowa Code ch. 537).

The Prefatory Note to the U3C(74) sets out the philosophy underlying the U3C:

A basic issue in any regulation in this area is the price of credit. In simplest terms, consumers want credit at the lowest possible prices, and creditors want to supply credit but can and will do so only if they may reasonably expect repayment of principal plus an adequate return on credit extended. In a free economy the prices of goods, services and land traditionally have been controlled by free operation of the marketplace. To some extent this principle has also extended to the price of credit but for a variety of historical reasons ... societies have attempted to control the price of credit by executive or legislative fiat. Invariably these attempts have either dried up "legal" or legitimate credit or significantly reduced the amount of credit which would have been available in a free economy. Invariably, too, consumers have been losers by this process.

U3C(74) at 90.

The U3C was intended to "abolish the crazy-quilt, patch-work welter of prior laws on consumer credit and replace them by a single new comprehensive law providing a modern, theoretically and pragmatically consistent structure of legal regulation designed to provide an adequate volume of credit at reasonable cost under conditions fair to both consumers and creditors." *Id.* at 88. Under this system, all creditors dealing with consumers would be covered by the same statute. *Id.*

The basic policies underlying the U3C for consumer credit as to both sales and loans are (1) "to conform in spirit and substance to the Federal Truth in Lending Act," (2) "to set maximum rates high enough to permit most of the present legitimate and respectable markets to operate," and (3) "to encourage competition to set actual rates lower than the maxima." Robert Braucher, *Consumer Credit Reform: Rates, Profits and Competition*, 43 Temple L.Q. 313, 318 (1970).

The U3C does not use the term "interest." Rather it uses the term "finance charge." One writer explains the rationale for the U3C's approach:

Usury limitations generally apply to the "interest" charged by a lender. Judicial decisions have often facilitated evasion of the usury laws by giving a narrow definition to "interest." Interest normally means the amount paid by the borrower as a rental charge for the borrowed money and as compensation to the lender for the risk of non-payment. There are, however, other administrative costs which are incurred in establishing and servicing the loan which technically are not interest but for which the lender must nevertheless be compensated. If usury limitations apply only to interest, lenders sometimes can evade these laws by making many charges which, though technically not interest, have the effect of increasing the return to the lender. *The Code avoids the use of the term "interest." All charges which the debtor incurs for the privilege of obtaining the loan are included in the loan finance charge if they are paid directly or indirectly to the lender.*

Robert L. Jordan & William D. Warren, *The Uniform Consumer Credit Code*, Colum. L.Rev. 387, 395–96 (1968) (emphasis added) [hereinafter Jordan & Warren].

The U3C sets a ceiling of 21% on the finance charge. U3C(74) § 2.401, at 155–

57. The U3C defines "finance charge" as "the sum of all charges payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, including any of the [four] following types of charge...." U3C(74) § 1.301(20), at 125–26.

According to Jordan and Warren,

*[t]he definitions of loan finance and credit service charges are meant to be all-inclusive.* There are, however, important exceptions to these definitions. Certain default and delinquency charges are excepted [from the definition of finance charge] on the theory that debtors who do not pay their debts cause additional expenses to the creditor for which compensation must be provided....

In addition ... several other costs, which arise at the time the credit is extended, are also excluded from the definition of the loan finance ... charge. The Code recognizes the following additional charges: (1) official fees, (2) a general category of charges for benefits conferred on the debtor in connection with the loan or credit sale, but which are of value to him apart from the credit, and (3) insurance charges.

Jordan & Warren at 396–97 (emphasis added); *see also* U3C(74) §§ 1.301(20) cmt., at 133 ("finance charge" includes all fees "whatever the parties call them, if imposed by the creditor on the consumer, unless the charge is excluded by paragraph (b) as a default or delinquency charge, an additional or deferral charge, or a credit card discount"), 2.501, at 158–59 (additional charges), 2.502, at 160–61 (delinquency charges), 2.503 at 162–64 (deferral charges).

1. **The IU3C.** The IU3C follows the U3C in all of these respects. Iowa Code section 537.2401(1) allows a lender to "re-ceive a finance charge ... not exceeding twenty-one percent per year on the unpaid balance of the amount financed." Iowa Code § 537.2401(1).

Iowa Code section 537.1301(19)(*a*) defines "finance charge":

. . . .

Except as otherwise provided in subsection "*b*"; "*finance charge*" means the sum of all charges payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, including any of the following types of charges which are applicable: [similar to the four types of charges as are found in the U3C].

Iowa Code § 537.1301(19)(*a*).

Iowa Code section 537.1301(19)(*b*)(1) sets out those charges that are not included in the term "finance charge." These non-included charges are similar to those found in the U3C.

Iowa Code section 537.1301(19)(*b*)(2) sets out the "additional charges as defined in section 537.2501 or deferral charges as defined in section 537.2503" that are not included in the term "finance charge." These additional charges and deferral charges are also similar to those found in the U3C.

■ 2. **Analysis.** For two reasons, we agree with Conseco that the IU3C does not prohibit particular fees. Rather the IU3C caps finance charges and provides an exception to that cap by listing fees that may be charged in addition to the finance charge without regard to the cap. As to certain other fees, the IU3C does not prohibit them but treats them as part of the finance charge, subject to the cap.

Our first reason for concluding that the IU3C does not prohibit particular fees relates to statutory interpretation. The dis-

trict court found an ambiguity in the word "including" in the definition of "finance charge" found in section 537.1301(19)(*a*). According to the district court, "including" could mean either that the following list was exclusive, that is, "finance charge" includes only the fees described in the following list. Or the word could mean that the following list was nonexclusive, that is, "finance charge" includes but is not limited to the examples provided in the list.

Unlike the district court, we find no such ambiguity but conclude the language in section 537.1301(19)(*a*) is clear. We agree with Conseco that only the nonexclusive meaning of the word "including" fits the statutory framework of the IU3C. Iowa Code § 537.1301(19)(*a*). *See T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 162–63 (Iowa 1999) (in construing statute, words must be read in context, and not in isolation).

As mentioned, section 537.1301(19)(*a*) defines "finance charge" as "the sum of *all* charges payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, *including any of the [four] following types of charges which are applicable....*" Iowa Code § 537.1301(19)(*a*) (emphasis added). To construe the word "including" to introduce an exclusive list would conflict with the word "all." *See T & K Roofing*, 593 N.W.2d at 162–63. By the plain language of section 537.1301(19)(*a*), the list following "including" does not encompass all charges.

Additionally, the legislature knows how to prohibit loan fees. For example, Iowa Code section 535.8(2)(*b*), pertaining to loan charges for the purchase of a single-family or a two-family dwelling, has the following prohibition: "Collection of any cost other than as expressly permitted by this let-tered paragraph is prohibited." Iowa Code § 535.8(1),(2)(*b*). We find it significant that the legislature did not use similar language in the IU3C.

Our second reason for concluding that the IU3C does not prohibit particular fees is that such a prohibition conflicts with the underlying policies of the U3C, which we have earlier mentioned. We can assume in passing the IU3C the legislature was well aware of those policies. Implicit in those policies is the notion that it is irrelevant how a lender itemizes the finance charge or what the lender may call the fees included in the charge. The U3C's language would assure that the fees, however a creditor might describe them, would all be treated as part of the "finance charge" and be disclosed as such. Borrowers would then know the true cost of the credit and would be in a position to shop for more reasonable credit rates from competing lenders.

In reaching its decision that the IU3C prohibits lenders from charging fees not listed in the IU3C, the district court relied in part on a two-page chart from the Iowa Division of Banking's 2000 Iowa Banking Review. The chart shows various fees as "NOT ALLOWED" in consumer loans. The document suggests that the agency has construed the statutes at issue to disallow a consumer loan creditor's use of at least two of the three disputed charges in this case—the origination fee and the processing fee.

We think for three reasons we should give the chart no deference. First, the chart itself contains a disclaimer. The chart states it is "not the law, but is meant to guide one to the appropriate section in the law." Second, there is no record concerning the analysis the agency used in reaching its conclusion. Last, even were we to give the chart deference, we do not find it persuasive.

Here Conseco charged the Lutteneggers a loan origination fee of $766, a loan processing fee of $200, and a courier fee of $6. The Lutteneggers contend and the district court ruled that the IU3C prohibits a lender from charging any fee that is not expressly listed in Iowa Code section 537.1301(19)(*a*) as included in the "finance charge" or in Iowa Code section 537.2501 as a charge permitted in addition to the finance charge. *See* Iowa Code § 537.1301(19)(*b*)(2) (" 'finance charge' does not include ... (2) additional charges as defined in section 537.2501, or deferral charges as defined in section 537.2503"). Because the disputed charges were not listed in either provision, the court ruled that they were prohibited.

As our analysis shows, we reach a contrary conclusion. To prove a violation of the IU3C, Lutteneggers must compute the finance charge, including both the interest rate and the three disputed fees. They can show a violation only if the finance charge so computed exceeds the 21% cap in section 537.2401(1). The Lutteneggers' note provided for interest at 16.59%. The three disputed fees were included in the finance charge and in the 17.726% annual percentage rate disclosed in the Truth–in–Lending Act disclosure statement that Conseco gave the Lutteneggers. The 17.726% rate does not exceed the cap of 21%. We therefore conclude as a matter of law that the Lutteneggers have proven no violation of the IU3C. All of the disputed charges were permissible. The district court therefore erred in concluding otherwise and in not granting Conseco's motion for partial summary judgment.

**C. The alleged Iowa Code Section 535.8(2)(*a*) violation.** Iowa Code section 535.8 limits the fees a lender may charge on a loan of money that is to be used for the purchase of real property that is a single-family or a two-family dwelling occupied or to be occupied by the borrower. Subsection 2(*a*) of that statute pertinently provides that "a lender may collect from a borrower, a seller of property, another lender, or any other person, or from any combination of these persons, in contemplation of or in connection with a loan, a commitment fee, closing fee, or both, *that is agreed to in writing by the lender and the persons from whom the charges are to be collected.*" Iowa Code § 535.8(2)(*a*) (emphasis added).

In its motion for partial summary judgment, Conseco contended that this provision permitted Conseco to charge Carpenter a closing fee of $300. In support of that contention, Conseco argued as it does here that the HUD–1 form which Carpenter signed constituted the required written agreement. In further support of its contention, Conseco argued that line 1101 of the HUD–1 form states in writing that the "Settlement or Closing Fee to GAC" in the amount of $300 is being paid as part of the loan transaction.

The district court concluded that the HUD–1 form could not satisfy the requirements of Iowa Code section 535.8(2)(*a*). The court gave two reasons for its conclusion: the statement was not signed by the lender and was drafted by a governmental entity for the specific purpose of disclosure to the borrower, not for use as evidence of any agreements between borrowers and lenders.

For reasons that follow, we disagree with the district court's conclusion. Iowa Code section 535.8(2)(*a*) does not define the phrase "agreed to in writing." Although the HUD–1 form does not contain the usual language of agreement, we have recognized such specific language is unnecessary:

The law has outgrown its primitive state of formalism when the precise word was the sovereign talisman, and every slip

was fatal. It takes a broader view today. A promise may be lacking and yet the whole writing may be "instinct with an obligation," imperfectly expressed. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 27 (Iowa 1978) (citation omitted).

■ Moreover, it was not necessary for the lender to sign the HUD–1 form to render that document a written agreement within the meaning of section 535.8(2)(a). Although the statute provides that the lender and borrower must agree in writing, the statute does not expressly state the lender must sign the document.

We agree with Conseco that the phrase "agreed to in writing" merely prohibits any oral agreement regarding these charges. What is important is that (1) the HUD–1 form was in writing, (2) it was proof of the parties' intention as to the agreed upon charges according to the loan transaction, and (3) it was signed by the party agreeing to pay the charges.

There was other uncontroverted evidence to support the agreement. Carpenter signed a promissory note which indicated the loan amount of $113,900 he agreed to pay; the HUD–1 form likewise indicated the loan amount of $113,900. Of this amount, $107,427.96 was to be used to refinance the prior debt and the remaining $6,472.04 was to be used to pay the specific fees and charges which included the $300 closing fee. Before the disbursements could be made, Carpenter had to acknowledge and accept the disbursements, which he did by signing the HUD–1 form. *See Hilltop Community Sports Ctr., Inc. v. Hoffman*, 755 A.2d 1058, 1062 (Me.2000) ("The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purposes, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument.").

We hold as a matter of law that the HUD–1 form here constituted a written agreement within the meaning of section 535.8(2)(a). The $300 closing fee was therefore a permissible charge. The district court erred in concluding otherwise and in not granting Conseco's motion for partial summary judgment on this issue.

## IV. The Class Action Ruling.

■ **A. Scope of Review.** Because the district court enjoys broad discretion in the certification of class action suits, our review is limited to a determination of whether the district court has abused that discretion. *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 44 (Iowa 2003). Such an abuse of discretion occurs only when the district court's grounds for the certification ruling were clearly unreasonable. *Id.*

■ **B. Applicable Law.** Iowa Rules of Civil Procedure 1.261 to 1.263 pertain to class actions. Because these rules closely resemble Federal Rule of Civil Procedure 23, we may rely on federal authorities construing similar provisions of federal rule 23. *Id.*

Our rules allow one or more members of a class to sue as representative parties on behalf of all in a class provided two conditions are met: (1) the class is so numerous that joinder of all parties is impracticable and (2) there is a question of law or fact common to the class. Iowa R. Civ. P. 1.261.

■ To certify a class action, the district court must find all of the following:

a. The requirements of rule 1.261 have been satisfied.

b. A class action should be permitted for the fair and efficient adjudication of the controversy.

*c.* The representative parties fairly and adequately will protect the interests of the class.

Iowa R. Civ. P. 1.262(2). The plaintiff has the burden of proving that a purported class of plaintiffs meets all three criteria. *Vos,* 667 N.W.2d at 45. The district court here made findings on all three criteria.

If appropriate, the district court may, as it did here, divide a class into subclasses and treat each subclass as a class. Iowa R. Civ. P. 1.262(3)(*c* ).

■■■■ Rule 1.263(1) sets forth a number of factors that the district court is to consider and weigh in determining whether the prerequisite of rule 1.262(2)(*b* ) (the class action should be permitted for the fair and efficient adjudication of the controversy) has been met. The factors in rule 1.263(1) "center on two broad considerations: 'achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants.' " *Vos,* 667 N.W.2d at 45 (citation omitted). The district court need not assign weight to any of the factors listed, a fact further evidencing the intent to grant the district court considerable discretion. *Id.* Moreover the district court need not make written findings as to each factor. *Id.* Rather, the district court need only weigh and consider the factors and come to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy. *Id.*

One of the factors in rule 1.263(1)(*e* ) is that "common questions of law or fact predominate over any questions affecting only individual members." Iowa R. Civ. P. 1.263(1)(*e* ). It is this factor that is primarily at issue here.

■■■■ Underlying the court's inquiry into the predominance issue "is the recognition [that] the class action device is appropriate only where class members have common complaints that can be presented by designated representatives in the unified proceeding." *Vignaroli v. Blue Cross of Iowa,* 360 N.W.2d 741, 744 (Iowa 1985). This does not mean, however, that "the individual claims be carbon copies of each other." *Id.* at 745. Rather, as one authority has noted, the test for predominance

is a pragmatic one, which is in keeping with the basic objectives of the [class action rule]. *When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than an individual basis.* ... [C]ourts have held that a [class action] can be brought ... even though there is not a complete identity of facts relating to all class members, as long as a "common nucleus of operative facts" is present....

The common questions need not be dispositive of the entire action. In other words, "predominate" should not be automatically equated with "determinative" or "significant." *Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the [class] action will be considered proper ....* Typically, this situation arises in antitrust or securities fraud cases.... [I]n these actions the courts generally hold that if defendant's activities present a "common course of conduct" so that *the issue of statutory liability is common to the class,* the fact that damages ... may vary for each party does not require that the class action be terminated....

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 528–33 (1986) (foot-

notes omitted) (emphasis added) [hereinafter Wright]; *accord Vignaroli,* 360 N.W.2d at 745.

■ Our class action rules do not permit an inquiry into the merits of class action claims for relief. *Vos,* ´667 N.W.2d at 48. Relevant here is rule 1.262(1), which provides that "as soon as practicable after the commencement of a class action the court shall hold a hearing and determine whether or not the action is to be maintained as a class action." The court may make a certification order conditional and may alter or amend it before a decision on the merits. *See* Iowa R. Civ. P. 1.265(1).

As one court explained concerning the federal class action rule:

In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action. Rule 23 delineates the scope of inquiry to be exercised by a district judge in passing on a class action motion. Nothing in that Rule indicates the necessity or the propriety of an inquiry into the merits. Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. Failure to state a cause of action is entirely distinct from failure to state a class action.

*Miller v. Mackey Int'l, Inc.,* 452 F.2d 424, 427–28 (5th Cir.1971) (citations omitted).

■ In short, the question of certification is a procedural one "that does not ask whether an action is legally or factually meritorious." *Linder v. Thrifty Oil Co.,* 23 Cal.4th 429, 97 Cal.Rptr.2d 179, 2 P.3d 27, 34 (2000). However, the important interests of fairness and efficiency could sometimes be better served

when class causes of actions are screened for legal sufficiency before the matter of certification is decided. But nothing prevents a court from weeding out legally meritless suits prior to certification via a defendant's demurrer or pretrial motion. In fact, it is settled that courts are authorized to do so.

When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer), or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards. Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural protections would be necessary to ensure that an otherwise certifiable class is not unfairly denied the opportunity to proceed on legitimate claims. Substantial discovery also may be required if plaintiffs are expected to make meaningful presentations on the merits. All of that is likely to render the certification process more protracted and cumbersome, even if, as [the defendant] suggests, trial courts were prohibited from resolving factual disputes. Such complications hardly seem necessary when procedures already exist for early merit challenges.

*Id.* at 179, 2 P.3d at 34–35 (citations omitted) (footnotes omitted).

At least one case has reached this court on a motion for summary judgment before a class certification. *See, e.g., Gardin v. Long Beach Mortgage Co.,* 661 N.W.2d 193 (Iowa 2003) (borrowers brought class action against lender for alleged violation of statute concerning limits on loan fees; held district court did not err in sustaining lender's motion for summary judgment on liability issue). In *Gardin,* we heard this appeal even though there presumably had not been a class-action determination. *Id.*

■ **1. The import of our decision on the two partial summary judgment rulings.** In deciding the merits of the partial summary judgment rulings, we have screened the class causes of action for legal sufficiency in the interests of fairness and efficiency. Our conclusion that all of the fees that the Lutteneggers disputed were permissible statutory charges means the Lutteneggers have no viable cause of action to pursue for the alleged statutory violations. Because the Lutteneggers' breach of contract theory was based on the alleged unlawful charges, that action is likewise no longer viable. In this connection, we reject the Lutteneggers' fallback position that their breach of contract action is still viable because the alleged unlawful charges are interest thereby rendering the interest rate on the note incorrect. As our statute clearly states, these charges are not interest. *See* Iowa Code § 537.1301(19)(*a*) (defining "finance charge" to be the sum of interest *and* all other charges paid by the borrower "as an incident of or as a condition of the extension of credit," other than certain expressly excepted fees). There remains therefore no basis for class certification concerning the consumer loan subclass.

Our conclusion that the closing fee that Conseco charged Carpenter was permissi-ble does not mean there is no viable cause of action that Carpenter may pursue. That is because Conseco did not move for summary judgment as to two fees that Carpenter contended were not permitted under section 535.8. Carpenter contended that the loan discount fee in the amount of $3,417 was improperly charged and is not permitted by the terms of Iowa Code section 535.8(2)(*a*). He also contended that the title insurance fee of $560 to "Glen Allen" is not permitted under the terms of Iowa Code section 535.8(2)(*b*)(10) ("A lender may collect... [t]he cost of a title guaranty issued by the Iowa finance authority pursuant to chapter 16.... Collection of any cost other than as expressly permitted by this lettered paragraph is prohibited."). Because these two issues remain undecided, we are required to consider the merits of the class certification ruling concerning the home acquisition loan subclass.

**2. Merits of the class certification ruling concerning the home acquisition loan subclass.** As mentioned, the district court addressed the following issues concerning class certification: (1) numerosity, (2) commonality, (3) fair and efficient adjudication, and (4) fair and adequate protection of the interests of the class by representative parties.

On appeal, Conseco raises only issues concerning the district court's finding that the class action should be permitted for the fair and efficient adjudication of the controversy. *See* Iowa R. Civ. P. 1.262(2)(*b*). In particular, Conseco raises arguments concerning one of the "relevant factors" the court should consider in deciding whether a class action should be permitted for fair and efficient adjudication: "Whether common questions of law or fact predominate over any questions affecting only individual members." Iowa R. Civ. P. 1.263(1)(*e*). On this issue, Conseco raises a number of arguments it did not raise in

the district court. We address only arguments raised and addressed in the district court.

■ In its ruling on "commonality and efficiency," the district court determined, and we agree, that the significant common question was whether Conseco violated Iowa Code sections 535.8 or 537.2501 in making charges to its Iowa borrowers in consumer loan or home acquisition loan transactions. Here we are only concerned with alleged violations of section 535.8. This claim involves an alleged statutory violation. This is clearly a legal question, which is a classic issue that is considered common to a class. *See* Wright § 1778, at 528–33; *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 368 (Iowa 1989) (holding that breach of implied warranty constituted common question); *Vignaroli*, 360 N.W.2d at 744–45 (holding that plaintiffs' reliance on written provisions of their employment manual constituted the "gist of their claim"). Like the district court we reject Conseco's argument that determination of whether a loan was governed by section 535.8 would require extensive discovery, depositions, and individual court rulings. The court suggested a claim process as one possible way to determine the nature of the loans, a suggestion we approve.

■ Conseco asserts the district court punished it for a failure to keep certain records and imposed record keeping requirements after the fact where the legislature has not done so. We disagree. The district court was not imposing a record keeping requirement. Rather, the court drew the logical conclusion that Conseco at some point in the loan process had to determine the type of loan being made in order to determine if it had to comply with section 535.8. We should not deny the home acquisition loan subclass plaintiffs class certification based on Conseco's alleged failure to keep adequate records. It is not clear from the discovery conducted thus far whether Conseco's record-keeping assertions are true. Moreover, given the clear definition of "home acquisition loan" found in Iowa Code chapter 535, it appears a determination of whether a particular class member's loan is a home acquisition loan would not require as much investigation as Conseco suggests.

The district court also rejected, as we do, Conseco's argument that the court would have to make a case-by-case determination of whether a fee charged was improper in light of each borrower's circumstances. Carpenter correctly points out that this issue goes to proof of damages, rather than to common liability issues. We have recognized that "[t]he fact that a potential class action involves individual damage claims does not preclude certification when liability issues are common to the class." *City of Dubuque v. Iowa Trust*, 519 N.W.2d 786, 792 (Iowa 1994). At the certification stage, "[t]he appropriate inquiry is not the strength of each class member's personal claim, but rather, whether they, as a class, have common complaints." *Martin*, 435 N.W.2d at 367.

■ We must keep in mind that the district court retains the discretion to decertify the class if further discovery reveals individual questions predominate over those applicable to the class. *See Vos*, 667 N.W.2d at 46. At this point, however, Carpenter has met his burden of proving that common issues of fact or law predominate over any questions affecting only individual members. The district court did not abuse its discretion by granting the motion for class certification concerning the home acquisition loan subclass.

## V.   Attorney Fees.

■ Carpenter requests an order for appellate attorney fees in an amount to be determined by the district court upon com-

pletion of the case. We note that Iowa Code section 535.8(2)(*d*) permits an award of attorney fees to borrowers where a lender has collected prohibited fees. In the event such a violation is established in this case, the district court shall award appellate attorney fees. *Cf. Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (statute permitting award of attorney fees to successful plaintiff in an action to enforce a mechanic's lien "in no way limits attorney fees to those incurred in the district court"; therefore, award of appellate attorney fees permitted under the statute).

### VI. Disposition.

In sum, we reach the following conclusions. As a matter of law, the Lutteneggers have proven no violation of the IU3C. All of the disputed charges were permissible. The district court erred in concluding otherwise and in not granting Conseco's motion for partial summary judgment on this issue. Accordingly, concerning this issue, we reverse the district court ruling and remand for an order granting Conseco's motion for partial summary judgment.

The conclusion we reach means the Lutteneggers have no viable cause of action to pursue either the alleged statutory violations or their breach of contract theory. There remains therefore no basis for class certification concerning the consumer loan subclass. Accordingly, we reverse the district court certification order concerning the consumer loan subclass and remand for an order decertifying the class action as to this subclass.

As a matter of law the HUD–1 form constituted a written agreement between Conseco and Carpenter within the meaning of section 535.8(2)(*a*). The $300 closing fee was therefore a permissible charge. The district court erred in concluding otherwise and in not granting Conseco's motion for partial summary judgment on this issue. Accordingly, concerning this issue, we reverse the district court ruling and remand for an order granting Conseco's motion for partial summary judgment.

The conclusion we reach on this issue does not mean there is no viable cause of action that Carpenter may pursue. That is because Conseco did not move for summary judgment as to two fees Carpenter alleged were not permitted under section 535.8—the loan discount fee and the title insurance fee.

Because Carpenter has a viable cause of action concerning these two fees, we had to address the question of class certification concerning the home acquisition loan subclass. On this issue, we conclude, as the district court did, that common issues of fact or law predominate over any questions affecting only individual members. Accordingly, the district court did not abuse its discretion by granting the motion for class certification concerning the home acquisition loan subclass and we affirm the ruling on that issue.

Finally, the district court shall order appellate attorney fees in the event Carpenter establishes that Conseco has collected a prohibited fee.

Although we have not addressed all of the arguments of the parties, we have carefully considered them. Those we have not addressed either lack merit or were not properly preserved for our review.

We remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**

All Justices concur except STREIT and WIGGINS, JJ., who take no part.