# IN THE COURT OF APPEALS OF IOWA

No. 16-1230
Filed July 6, 2017

**RESIDENTS OF ROYAL VIEW MANOR by and through JEANETTE MCDOWELL, et. al.,**
Plaintiffs-Appellees,

**vs.**

**THE DES MOINES MUNICIPAL HOUSING AGENCY d/b/a ROYAL VIEW MANOR,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

The Des Moines Municipal Housing Agency appeals the district court order certifying a class action. **AFFIRMED.**

Eric G. Hoch, Kevin J. Driscoll and Kellen B. Bubach of Finley Law Firm, P.C., Des Moines, and Gregory R. Brown and Joseph G. Gamble of Duncan, Green, Brown & Langeness, P.C., Des Moines, for appellant.

Steven P. Wandro and Kara M. Simons of Wandro & Associates, P.C., Des Moines, and Jeffrey M. Lipman of Lipman Law Firm, P.C., Clive, for appellees.

Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Fifty-five tenants of Royal View Manor filed a lawsuit on their own behalf and on behalf of those persons similarly situated alleging the Des Moines Municipal Housing Agency (DMMHA) breached warranties of habitability by failing to properly remedy a bed bug infestation in the apartment building. The DMMHA alleges the district court erred in certifying the class action because the plaintiffs failed to prove joinder of all class members is impractical and individual issues predominate over class questions. Because the district court properly exercised its discretion in certifying the class action, we affirm.

**I. Background Facts and Proceedings.**

Royal View Manor is an eight-story, two-hundred-unit, apartment building in Des Moines. It is owned and operated by the DMHAA, which provides housing for low- and moderate-income individuals. The DMMHA has an income limit for those who reside in its buildings and rents are income-based.

In 2010, the DMMHA learned of a bed bug infestation at Royal View Manor. It retained a pest-control firm to treat the infestation in individual apartment units based on resident complaints. In June 2010, the DMMHA changed to a preventative program, eventually retaining Preferred Pest Control to investigate each apartment quarterly and treat any infestation detected through a combination of heat and chemical treatments. Preferred Pest Control made other recommendations for controlling the spread of bed bugs through the building, and the DMMHA implemented some of those recommendations.

The district court summarized the evidence regarding the extent of the bed bug infestation at Royal View Manor:

When Preferred [Pest Control] completed its first full inspection at Royal View [Manor] in 2010, it detected bed bugs in forty-four apartments, which is twenty-two percent of the apartments. The [DMMHA] and Preferred [Pest Control] set a goal of getting to ten percent. The documents show some limited success for different periods of time. For example, Preferred [Pest Control]'s records show it detected bed bugs in thirteen apartments during the spring quarter of 2013. However, Royal View [Manor] has never met its goal of ten percent in a lasting sense. For example, bed bugs were detected in twenty-seven apartments in 2011, thirty-one apartments in the fall of 2012, forty-four apartments in the winter of 2013, and thirty-six apartments in the summer of 2014. In June of 2015, bed bugs were detected in seventy-two out of 183 apartments. . . .

The bed bug detections were not confined to the same apartments as prior detections. For example, from September of 2010 to April of 2015, bed bugs were detected in apartment 214 on five different occasions. However, bed bugs were not detected in some apartments (such as 202 and 201) for the first time until 2014 and 2015. As a result, there has been a cumulative effect resulting in a large majority of the apartments at Royal View [Manor] having been detected to have bed bugs on at least one occasion over the period from 2010 to 2015.

In October 2014, fifty-five current and former residents of Royal View Manor filed a petition against the DMMHA alleging it had breached express, implied, and statutory warranties of habitability. The plaintiffs sought class certification for "[a]ll tenants of Royal View Manor who were subject to infestation of bed bugs from at least the date of 2007 to present," estimating the class could include between 300 and 600 residents. They also sought declaratory and injunctive relief as a class in addition to damages on behalf of themselves and the class.

The district court found the plaintiffs had met the requirements of the Iowa Rules of Civil Procedure for class certification. However, because only one resident reported contact with bed bugs before 2010, the district court limited the

class to "all tenants of Royal View Manor from January 1, 2010, to present." The DMMHA appeals from this order.

## II. Scope and Standard of Review.

Because the district court enjoys broad discretion in certifying class-action lawsuits, we review the district court's ruling granting certification of a class for an abuse of discretion. *See Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 113 (Iowa 2017). An abuse of discretion occurs when the district court certifies a class action on clearly unreasonable grounds. *See id.* We will affirm a class certification if the district court weighed and considered the factors before it and reached a reasoned conclusion concerning whether the class action should be permitted for a fair adjudication of the controversy. *See id.*

## III. Analysis.

The objective of a class action is

> the efficient resolution of the claims or liabilities of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and the establishment of an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits.

*Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1754, at 49 (2d ed. 1986)). With this objective in mind, the Iowa Rules of Civil Procedure set forth four prerequisites that the plaintiffs must establish before the court may certify a class action: (1) the class must be so numerous that joinder of all members is impracticable, (2) there must be a question of fact or law common to the class, (3) the class action must provide for the fair and efficient

adjudication of the controversy, and (4) the representative parties must fairly and adequately protect the interests of the class. *See* Iowa Rs. Civ. P. 1.261-.263. Although failing to prove any one of these prerequisites is fatal, we note that the burden on the class representatives at the class certification stage is "light." *See Freeman*, 895 N.W.2d at 114*.* Furthermore, the rules should be "liberally construed" to maintain class actions. *See id.* (citation omitted)*.*

### A. Numerosity.

The DMMHA argues the district court abused its discretion in certifying the class action because the plaintiffs failed to establish the class is so large that joinder of members would be impractical. *See* Iowa Rs. Civ. P. 1.261(1), 1.262(2)(a). Although the district court cited the size of the class in determining joinder would be impractical, the DMMHA argues that "sheer numbers are not always determinative."

Iowa has adopted the general rule "that if the class is large, numbers alone are dispositive to show impracticability." *Legg v. West Bank*, 873 N.W.2d 756, 759 (Iowa 2016) (quoting *City of Dubuque v. Iowa Trust*, 519 N.W.2d 786, 792 (Iowa 1994)). If a class has forty or more members, it "is within the range where impracticability is presumed." *Id.* The district court noted that fifty-five Royal View Manor residents were named plaintiffs at the time action was filed and that the potential size of the class is estimated to be between 300 and 600 individuals. However, it noted that "even a small number of additional suits would not serve judicial economy." The court also considered other factors in determining that joinder was impracticable, citing the low incomes of residents who "would not likely have the financial resources to bring an individual action"

and the possibility that former residents may be dispersed over a wide area. *See Pa. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (listing the financial resources of class members and geographical dispersion as factors to be considered in determining whether a class is superior to joinder in a particular case).

The district court considered the appropriate factors in determining whether joinder would be impracticable. The number of plaintiffs already named in the action exceeds the threshold at which we presume impracticability. The estimated size of the class is five to ten times larger. Additionally, "[a]ny doubts regarding joinder impracticability should be resolved in favor of upholding the class." *City of Dubuque*, 519 N.W.2d at 792. For these reasons, the district court's determination that joinder is impracticable is neither untenable nor unreasonable, and the district court was acting within its discretion in conclusion that joinder would be impractical.

### B. Commonality and Predominance.

The DMMHA also challenges the class certification by claiming that individual issues predominate over class questions. It argues the district court permitted class certification "based upon generalized proof relating to the building as a whole" when the question of whether a warranty of habitability has been breached for a particular apartment so as to render it uninhabitable depends on the circumstances of each individual case.

The predominance issue encompasses both the second and third requirement for class certification. *See Legg*, 873 N.W.2d at 759-62 (analyzing the "predominance" question under the commonality prong and acknowledging it

as an element to be considered in determining whether a class action should be permitted for the fair and efficient adjudication of the controversy). *But see Freeman*, 895 N.W.2d 115-19 (analyzing the questions of commonality and predominance separately). In order to certify a class action, there must be a question of law or fact that is common to the class. *See* Iowa Rs. Civ. P. 1.261(2), 1.262(2)(a). Additionally, class certification must provide for "the fair and efficient adjudication of the controversy." Iowa R. Civ. P. 1.262(2)(b). One of the factors the court must "consider and give appropriate weight"[1] in determining whether class certification will lead to fair and efficient adjudication is "[w]hether common questions of law or fact predominate over any questions affecting only individual members." Iowa R. Civ. P. 1.263(1)(e); *accord Freeman*, 895 N.W.2d at 115.

The district court found there are "unquestionably" common issues of law and fact, noting that the claims against the DMMHA are limited to tenants of the same apartment building and based on a bed bug infestation at that building. The court observed that although some tenant's apartments were not infested by bed bugs during their residency at Royal View Manor, the infestation was widespread and covered "the vast majority of the apartments" at Royal View Manor at some point. On that basis, the court noted that some of the tenants may have stronger claims but concluded that, if necessary, it could create subclasses to manage the litigation. Ultimately, the court concluded class

---

[1] We note that the district court has "considerable discretion" in weighing the factors listed in rule 1.263(1). *See Freeman*, 895 N.W.2d at 115. Even if we were to find individual questions predominate, this factor is only one of thirteen the court must consider in determining whether the class action would provide fair and efficient adjudication of the controversy. *See* Iowa R. Civ. P. 1.263(1).

certification would benefit judicial economy because that there would be "considerable duplication of evidence showing the nature of the bed bug problem at Royal View and the efforts the [DMMHA] used to attempt to combat the problem" if the suits were brought individually. It noted that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights . . . by aggregating the relatively paltry potential recoveries into something worth [an attorney's] labor." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Because the class of Royal View Manor tenants "consists of low-income individuals who do not likely have the resources to file and present a claim on their own" and that some of whose claims "may be relatively small," the district court determined that class certification would satisfy this policy. Finally, the court noted that fifty-five residents were already plaintiffs in the lawsuit, and determined there is no reason for believing class certification "will otherwise interfere with the rights any of the class members would have if filing or maintaining a separate cause of action."

Our supreme court has noted that the test for predominance is a pragmatic one. *See Luttenegger v. Conseco Fin. Servicing Corp.*, 671 N.W.2d 425, 437 (Iowa 2003). The facts relating to each class member need not be identical. *Id.* Nor must they be dispositive. *See id.* The common questions need not even be determinative or significant. *See id.* As long as one or more significant common questions of fact or law can be resolved for all members of the class in a single adjudication, class certification is justified. *See id.* If the defendant's liability is based on a common course of conduct, variation in the

amount of individual class members' damages will not defeat certification of the class action. *Id.*

There is a common nucleus of operative fact with regard to the DMMHA's conduct, which creates a basis for its liability. The plaintiffs allege a widespread bed bug infestation existed at Royal View Manor for a number of years, which affected the majority of apartment units at some point in time. The plaintiffs allege that the DMMHA rented units at Royal View Manor with knowledge of the bed bug infestation while failing to disclose the condition. They also allege the DMMHA failed to take reasonable measures to remedy the infestation after receiving notice of it. Although the DMMHA argues there are questions concerning whether the infestation affected each class member's individual apartment unit, the underlying basis for the plaintiffs' claim is that the bed bug infestation rendered Royal View Manor uninhabitable as a whole—regardless of whether the infestation was present in an individual's apartment unit.[2] Even though those class members with infestations in individual apartment units sustained greater damages than those who did not, this disparity will not defeat certification of the class action.

The district court appropriately considered and weighed the factors before

---

[2] With regard to the merit of the plaintiffs' claims as a whole, "[o]ur class action rules do not permit an inquiry into the merits of class action claims for relief." *See Luttenegger*, 671 N.W.2d at 438. Class certification is a procedural question. *See id.* Because the DMMHA did not move for summary judgment, the question of whether the actual is legally or factually meritorious is not before us. *See id.* at 438.

it in determining the class certification would provide a fair and efficient adjudication of the controversy.  Because we are unable to find the district court abused its discretion in certifying the class action, we affirm.

**AFFIRMED.**