**Joe COMES and Riley Paint, Inc., an Iowa Corporation, Appellees,**

v.

**MICROSOFT CORPORATION, a Washington Corporation, Appellant.**

No. 03–1703.

Supreme Court of Iowa.

May 13, 2005.

Edward W. Remsburg of Ahlers & Cooney, P.C., Des Moines, David B. Tulchin and Joseph E. Neuhaus of Sullivan & Cromwell LLP, New York, New York, Thomas W. Burt, Richard Wallis, and Steven J. Aeschbacher of Microsoft Corporation, Redmond, Washington, and Charles B. Casper of Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, Pennsylvania, for appellant.

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, and Richard M. Hagstrom of Zelle, Hofmann, Voelbel, Mason & Gette LLP, Minneapolis, Minnesota, for appellees.

LARSON, Justice.

The plaintiffs in this antitrust case have been certified by the district court to represent two classes of purchasers of Microsoft products. *See* Iowa Rs. Civ. P. 1.261–1.279. Microsoft appealed, claiming the

plaintiffs have not established the prerequisites for class certification. We affirm.

## I. *Facts and Prior Proceedings.*

This suit was brought against Microsoft Corporation for violating the provisions of the Iowa competition law, Iowa Code §§ 553.4, 553.5 (1997). The plaintiffs, on behalf of themselves and the classes they seek to represent, claim that Microsoft engaged in monopolistic practices from 1994 to 2001—specifically that Microsoft artificially inflated the cost of its products, including licenses for its operating systems software and its applications software. This is the second time this case has been before this court. *See Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002) [hereinafter *Comes I* ]. The facts were set out fully in *Comes I*, and we need not repeat them in detail here.

The proposed classes have two named plaintiffs, Joe Comes and Riley Paint, Inc. Both plaintiffs purchased computers with preinstalled Microsoft operating systems and applications software. The named plaintiffs represent a class of "indirect purchasers" of Microsoft products. "Indirect purchasers" means parties to whom Microsoft did not directly sell its products, but who ultimately obtained the products through the stream of commerce. In *Comes I* we held, on a divided vote, that indirect purchasers may maintain an antitrust suit against Microsoft. *Comes I*, 646 N.W.2d at 451. That issue is not before us on this appeal.

Plaintiffs' contention is that Microsoft overcharged the direct purchasers, and those purchasers in turn passed on the overcharges to the ultimate buyers. The plaintiffs initiated this action to recoup the overcharges on behalf of all Iowa end purchasers of Microsoft operating systems and applications software. Two indirect purchaser classes were approved by the court: an operating-systems software class and an applications software class.

## II. *Standard of Review.*

 A district court's decision on class certification is reviewed for abuse of discretion. *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 44 (Iowa 2003). Our class-action rules are remedial in nature and should be liberally construed to favor the maintenance of class actions. *Lucas v. Pioneer, Inc.*, 256 N.W.2d 167, 175 (Iowa 1977).

> [The class-action rule] continues to have as its objectives the efficient resolution of the claims or liabilities of many individuals in a single action, the elimination of repetitious litigation and possibly inconsistent adjudications involving common questions, related events, or requests for similar relief, and the establishment of an effective procedure for those whose economic position is such that it is unrealistic to expect them to seek to vindicate their rights in separate lawsuits.

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1754, at 49 (2d ed.1986) [hereinafter Wright]. After a class has been certified, the district court may decertify it if circumstances so require. *Vos*, 667 N.W.2d at 46.

## III. *General Requirements for Class Certification.*

Members of a class may sue or be sued on behalf of their class if both of these are shown:

> (1) The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable.

(2) There is a question of law or fact common to the class.

Iowa R. Civ. P. 1.261.

Before certifying a class, a court must make these specific findings:

*a.* The requirements of rule 1.261 have been met.

*b.* A class action should be permitted for the fair and efficient adjudication of the controversy.

*c.* The representative parties fairly and adequately will protect the interests of the class.

Iowa R. Civ. P. 1.262(2). Microsoft does not contest the court's findings regarding element (*a*), but it does challenge its findings on (*b*) (fair and efficient adjudication) and (*c*) (fair and adequate representation).

A. *The fair and efficient administration of justice.* As noted, rule 1.262(2)(*b*) requires the court to find that a class action will promote a fair and efficient adjudication of the controversy. Rule 1.263(1), in turn, provides "a number of criteria the district court should consider in determining whether the prerequisite of rule 1.262(2)(*b*) ... has been met." *Vos,* 667 N.W.2d at 45. Thirteen factors under rule 1.263(1) are to be considered by the court, but Microsoft challenges the court's findings on only four:

1. "Whether common questions of law or fact predominate over any questions affecting only individual members," Iowa R. Civ. P. 1.263(1)(*e*);

2. "[w]hether a class action offers the most appropriate means of adjudicating the claims and defenses," *id.* 1.263(1)(*g*);

3. "[w]hether management of the class action poses unusual difficulties," *id.* 1.263(1)(*k*); and

4. "[w]hether a joint or common interest exists among members of the class," *id.* 1.263(1)(*a*).

"The factors in rule 1.263(1) center on two broad considerations: achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants." *Luttenegger v. Conseco Fin. Serv. Corp.,* 671 N.W.2d 425, 437 (Iowa 2003) (internal quotations omitted); *accord Vos,* 667 N.W.2d at 45; *Stone v. Pirelli Armstrong Tire Corp.,* 497 N.W.2d 843, 846 (Iowa 1993); *Vignaroli v. Blue Cross of Iowa,* 360 N.W.2d 741, 744 (Iowa 1985). "The rule does not require the district court to assign weight to any of the criteria listed ... [n]or does the rule require the court to make written findings as to each factor...." *Vos,* 667 N.W.2d at 45; *accord City of Dubuque v. Iowa Trust,* 519 N.W.2d 786, 793 (Iowa 1994); *Martin v. Amana Refrigeration, Inc.,* 435 N.W.2d 364, 369 (Iowa 1989). We will affirm the district court's decision if it "weigh[s] and consider[s] the factors and come[s] to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy." *Luttenegger,* 671 N.W.2d at 437; *accord Martin,* 435 N.W.2d at 369 ("[T]he court carefully considered all of the factors and then made a finding that a class action provided the best means for a fair and efficient adjudication of the controversy. Whether or not we agree with the decision arrived at by the trial court is not the issue. The issue is one of abuse of discretion."); *Vignaroli,* 360 N.W.2d at 744 ("The district court's ruling in this case reflects its consideration of those criteria.... The only question remaining for us is whether the trial court abused its discretion in making the favorable findings with regard to the class action certification.").

The North Dakota Supreme Court, in applying class-action rules similar to ours, has said:

"In most cases some of the thirteen factors [regarding the fair-and-efficient-administration-of-justice test] will weigh against certification and some will weigh in favor. It is for the trial court, employing its broad discretion, to weigh the competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy. Thus, even if [defendant] is correct in its assertion four of the factors weigh against certification, that does not preclude the court from certifying the class action if, in its opinion, those factors are outweighed by other factors supporting certification."

*Howe v. Microsoft Corp.*, 656 N.W.2d 285, 289 (N.D.2003) (quoting *Peterson v. Dougherty Dawkins, Inc.*, 583 N.W.2d 626, 629 (N.D.1998)). With these general principles in mind, we address Microsoft's specific challenges to the court's findings on the criteria listed in rule 1.263.

■ 1. *Predominance of common questions of law or fact.* Microsoft argues that the trial court abused its discretion in finding that common questions of law and fact predominate over individual issues under rule 1.263(1)(*e*). It contends a showing of predominance is a condition precedent to certification, but we disagree; this is only one of thirteen factors to be considered. In this case, the plaintiffs must prove that Microsoft violated the Iowa Competition Law, *see* Iowa Code § 553.5, and this violation caused class members to suffer identifiable harm and damages, *see id.* § 553.12.

Microsoft argues that:

On a motion for class certification in an antitrust action, the pivotal elements are impact and damages to the class members. Under well-established law, plaintiffs must demonstrate *at the time class certification is sought* that they have devised a viable method that can show, through common proof, that *each class member suffered impact and the amount of damages each sustained.*

(Emphasis added.) Microsoft made the same argument to the North Dakota Supreme Court, which rejected it, saying:

We have never suggested a class plaintiff must show there will be common proof on each element of the claim. Rather, we have repeatedly noted that the existence of individual issues is not necessarily fatal to class certification.

*Howe,* 656 N.W.2d at 289. Further, in *Luttenegger,* we said:

Underlying the court's inquiry into the predominance issue "is the recognition [that] the class action device is appropriate only where class members have common complaints that can be presented by designated representatives in the unified proceeding." This does not mean, however, that "the individual claims be carbon copies of each other." Rather, . . . the test for predominance

is a pragmatic one, which is in keeping with the basic objectives of the [class action rule]. *When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than an individual basis* . . . . [C]ourts have held that a [class action] can be brought . . . even though there is not a complete identity of facts relating to all class members, as long as a "common nucleus of operative facts" is present. . . .

671 N.W.2d at 437 (citations omitted).

■ 2. *The district court's finding that common issues predominate.* The district court gave weight to the predominance factor and concluded that it favored

certification. In analyzing this factor, the court highlighted five questions of law or fact that are common to all members:

[1] whether Microsoft is a monopolist in the markets for operating systems and applications software and the definition of those markets;

[2] whether Microsoft engaged in anticompetitive conduct in order to unlawfully maintain or acquire its monopoly power in those markets;

[3] whether Microsoft's conduct violated the Iowa Competition Law;

[4] whether Microsoft's conduct harmed the proposed class; [and]

[5] whether Plaintiffs and the putative class members are entitled to damages and the appropriate measure of such damages.

We believe the court's findings on the first three issues, which Microsoft does not seriously challenge, are sufficient in themselves to justify a finding of predominate issues. These three issues involve alleged statutory violations, which are "clearly ... legal question[s]" and are "classic issue[s] that [are] considered common to a class." *Luttenegger*, 671 N.W.2d at 440; *accord Martin*, 435 N.W.2d at 368 (holding that breach of implied warranty constituted common question); *Vignaroli*, 360 N.W.2d at 744–45 (holding that plaintiffs' reliance on written provisions in defendant's employment manual constituted the "gist of their claim"); *see also In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D.Minn. 1995) ("[C]onsidering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."); *Potash*, 159 F.R.D. at 693 ("[A]s a general rule in antitrust price-fixing cases, questions common to

the members of the class will predominate over questions affecting only individual members."); 7A Wright § 1778, at 529–30 ("[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper ... even though other important matters will have to be tried separately. Typically, this situation arises in antitrust ... cases." (Footnotes omitted.)). Because this case involves alleged statutory violations and damages common to all class members, the district court did not abuse its discretion by finding that common issues predominate.

3. *Can harm and damages be proven on a class-wide basis?* Microsoft contends that the district court's determination that common issues predominate was based, in part, on its finding that the last two issues—impact-of-harm and damages—were also common to the class. Microsoft argues that the court abused its discretion because it employed too lax a standard, i.e., " 'whether or not the proposed methods [of proof] are so insubstantial as to amount to no standard at all.' " Microsoft argues that the court abused its discretion on the predominance issue because it did not conduct a "rigorous analysis" of the evidence that was submitted.

It is true the district court quoted the "no standard at all" language from *Potash*, 159 F.R.D. at 697, but the court did not adopt it as the basis for its finding. Rather, it concluded that the plaintiffs' "proposed methods of proving injury-in-fact on a class-wide basis are based on sound and accepted economic theory" and presented

viable methods for establishing the difference between the prices that Microsoft would have been able to charge for the products at issue in a competitive environment and the prices Microsoft actually charged....

a. *Burden of proof.* Regarding the proof required at the class-certification stage, this court has stated that "as long as the court has before it sufficient information to form a reasonable judgment on the certification issue, it need not inquire further into the facts supporting plaintiffs' petition." *City of Dubuque,* 519 N.W.2d at 791 (citing 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 7.26, at 84 (3d ed.1992) [hereinafter *Newberg* ], and noting that when deciding a motion for class certification, the trial court should accept allegations in the complaint as true). Because Iowa is a notice-pleading state, this court has recognized that " 'it *may* be necessary for the court to probe behind the pleadings before coming to rest on the certification question.' " *Vos,* 667 N.W.2d at 48 (emphasis added). However in most circumstances, "[e]xcept where the facts underlying the class are merely speculative, ... the proponent's burden is light." *City of Dubuque,* 519 N.W.2d at 791.

Iowa Rule of Civil Procedure 1.262(1) provides the rationale behind this policy. That rule directs courts to determine whether certification of a class is appropriate "as soon as practicable after the commencement of a class action." Iowa R. Civ. P. 1.262(1). As one leading commentator recognized, the class action determination often occurs early in the proceedings, before significant discovery takes place. *See* 2 *Newberg* § 7.27 (explaining that, because of the need for an early class ruling, "usually at the pleading stage, ... traditional burden of proof concepts have limited applicability in the procedural context of class actions"). Further, a safety net is provided for cases in which certification is improvidently granted: the court may decertify the class at a later time. *Vos,* 667 N.W.2d at 46.

■ b. *Evidence presented in this case.* The evidence relied on by the court included a detailed affidavit furnished by Jeffrey K. MacKie–Mason, a professor of computer and information science and a professor of economics at the University of Michigan. Professor MacKie–Mason has given testimony regarding these issues in other indirect-purchaser cases against Microsoft in California, Massachusetts, Minnesota, and Wisconsin. In his affidavit, he states that the impact-of-harm prong is susceptible to class-wide proof and provides an economic theory whereby he claims he can show that, if wholesalers, distributors, and retailers are overcharged for a product, those increased costs will ultimately be passed on to the consumer. The professor concluded, based on his studies in these other states,

> that Microsoft's alleged violations would have had a common or class-wide impact upon all members of the classes proposed, and that computation of the damages suffered by the members of each class as a result of Microsoft's alleged violations is susceptible to common proof on a formulaic basis.

Microsoft challenges this conclusion largely on the ground the professor's studies were conducted in states other than Iowa. We fail to see, however, how the geographic residence of the affected purchasers has any bearing on the validity of the studies, and Microsoft shows us no basis for concluding otherwise.

Microsoft also attacks Professor MacKie–Mason's analysis, theories, and methodology, claiming that his economic methodology will not produce an accurate measure of harm and, consequently, that the plaintiffs have failed to present "real world" evidence to establish damages. Microsoft argues that the plaintiffs' proof is insufficient, claiming that Professor MacKie–Mason's theories are inaccurate

as a matter of fact and that the district court should have engaged in a rigorous analysis of this evidence to uncover its flaws. Specifically, it complains that the court abused its discretion because it

> did not require plaintiffs to show that their proposed methods for proving with classwide evidence that *each class member actually paid some portion of a passed-on overcharge—and the amount passed on*—were workable in light of the real world facts Microsoft presented.

(Emphasis added.)

Microsoft's argument fails because, in effect, it asks the court to make a class-certification ruling based on the merits of the case, something we have uniformly rejected. *See, e.g., Kramersmeier v. R.G. Dickinson & Co.*, 440 N.W.2d 873, 879 (Iowa 1989) ("[A] reversal of the trial court's certification order for failure of proof of reliance would be tantamount to requiring proof of plaintiffs' ability to 'win on the merits,' a showing clearly not contemplated by [the rules] or prior decisions of this court."). This court has instead consistently held that class certification does not involve an inquiry into the merits of a case. *See, e.g., Luttenegger*, 671 N.W.2d at 438 ("In short, the question of certification is a procedural one 'that does not ask whether an action is legally or factually meritorious.' "); *Vos*, 667 N.W.2d at 46 (" 'The appropriate inquiry is not the strength of each class member's personal claim, but rather, whether they, as a class, have common complaints.' For this reason, the court does not conduct a preliminary inquiry into the merits of a suit in a certification hearing." (Citation omitted.)); *Martin*, 435 N.W.2d at 367–68 ("In a certification hearing, the court does not 'conduct a preliminary inquiry into the merits of a suit.' Obviously, that is not to say that the court may not require sufficient information to form a reasonable judgment in deciding whether to certify a class action. But the trial court's focus is directed at whether 'class members have common complaints that can be presented by designated representatives in a unified proceeding.' " (Citations omitted.)).

Microsoft presented contradicting evidence, but it is inappropriate at the certification stage to resolve battles between experts. *Howe*, 656 N.W.2d at 293 (citing *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 292–93 (2d Cir.1999); *In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68, 79 (E.D.N.Y.2000), *aff'd* 280 F.3d 124 (2d Cir.2001)); *see also Potash*, 159 F.R.D. at 697.

We believe the appropriate test for consideration of expert testimony is that announced in *Visa Check/MasterMoney Antitrust Litigation*: "A district court must ensure that the basis of the expert opinion is not so flawed that it would be inadmissible as a matter of law." 280 F.3d at 135. That standard was also adopted by the North Dakota Supreme Court. *See Howe*, 656 N.W.2d at 295–96 ("As long as the basis of the expert's opinion is not so blatantly flawed that, on its face, it would be inadmissible as a matter of law, the court may consider the expert's evidence in determining whether to certify the class action."). In view of this court's liberal rules on the admission of expert testimony, we cannot say the plaintiffs' testimony is inadmissible as a matter of law.

B. *Adequacy of class representation.* Microsoft contends that, even if a class action might otherwise be maintained, these plaintiffs do not qualify to bring the action because they are not true representatives of the class. It contends (1) Joseph Comes is not an adequate representative because he is not a member of either class, (2) Riley Paint is not an adequate representative because it will not act to protect the rights of the absent class members,

and (3) the representative parties have not shown that they can acquire the financial resources needed to adequately represent the classes.

To find adequate representation, the court must be satisfied that the plaintiffs have established all of the following factors:

> a. The attorney for the representative parties will adequately represent the interests of the class.
>
> b. The representative parties do not have a conflict of interest in the maintenance of the class action.
>
> c. The representative parties have or can acquire adequate financial resources, considering rule 1.276, to ensure that the interests of the class will not be harmed.

Iowa R. Civ. P. 1.263(2).

■ 1. *Joseph Comes as a representative party.* The district court concluded that Joseph Comes is an adequate representative of the class, but Microsoft argues otherwise. It contends that Comes is not a class member because, to be a member of either class, he must have purchased Microsoft products. It claims that Comes did not personally purchase any of its products, pointing to a deposition in which Comes stated that his former company—Comes Vending & Office Copy Systems, Inc.—was the actual purchaser of the computer products.

Although the record contains conflicting evidence on this issue, the district court concluded that Comes purchased the computer in a personal transaction. On appellate review, the question is whether there is any reasonable basis in the record to support the district court's finding. *See Stone,* 497 N.W.2d at 846–49. We believe sufficient evidence supports the court's finding that Comes was an adequate representative.

2. *Riley Paint as a representative party.* The district court found, based on testimony by a principal of Riley Paint, that Riley Paint "understands its obligations as a class representative and that it takes those obligations seriously." Microsoft contends that this finding was erroneous because of certain contradicting responses the representative gave in his deposition. We disagree; based on all of the evidence, we conclude the district court did not abuse its discretion in finding that Riley Paint was an adequate representative.

■ 3. *Financial resources of the named plaintiffs.* Before recognizing the plaintiffs as adequate representatives, the district court must find that they "have or can acquire adequate financial resources, considering rule 1.276, to ensure that the interests of the class will not be harmed." Iowa R. Civ. P. 1.263(2)(c). Rule 1.276(2), in turn, provides:

> Upon a determination that the costs and litigation expenses of the action cannot reasonably and fairly be defrayed by the representative parties or by other available sources, the court by order may authorize and control ... advances by the attorneys ... *subject to reimbursement from any recovery obtained for the class.*

(Emphasis added.)

In this case, the plaintiffs' attorneys requested that the court issue an order under rule 1.276 approving their fee arrangement and their willingness to advance all costs. The district court entered an order granting that request. The court then considered that order when it determined that the plaintiffs have or can acquire adequate finances.

Microsoft asserts that the district court's consideration of the order was error. It argues that DR 5–103(B) of the Iowa Code of Professional Responsibility

expressly prohibits attorneys from advancing litigation expenses unless the client remains ultimately liable for the expenses. It was therefore inappropriate for the district court to consider such advances when determining whether the named plaintiffs have sufficient financial resources. Microsoft cites in support of that argument our *Stone* case, which requires the plaintiffs to present evidence to show how they will reimburse their attorneys in the event they are unsuccessful. *Stone*, 497 N.W.2d at 848–49. However, in *Stone* we did not discuss the impact of rule 1.276, or its predecessor, and its specific approval of the procedure used here. We therefore must distinguish *Stone*. DR 5–103(B), on which Microsoft relies, is undergoing extensive change at this time. The new rule states:

> A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter....

Iowa R. of Prof'l Conduct 32:1.8(e).[1]

One federal court, in vacating a district court's finding that a named plaintiff was inadequate because he was not willing to bear responsibility for all litigation costs, explained:

> Class actions assemble small claims—usually too small to be worth litigating separately, but repaying the effort in the aggregate. A representative plaintiff gains nothing from the collective proceeding. Under the district court's rationale, however, he could well lose, because filing the class suit would expose him to the entire costs of the case.... The very feature that makes class treatment appropriate—small individual stakes and large aggregate ones—ensures that the representative will be unwilling to vouch for the entire costs. Only a lunatic would do so. A madman is not a good representative of the class!

*Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir.1991) (Easterbrook, J.).

In view of Iowa Rule of Civil Procedure 1.276, and its provision for advancement of costs in a class-certification case, we conclude that the plaintiffs have sufficiently established their ability to provide financial resources.

In conclusion, on the adequacy of class representation, we find that both Comes and Riley Paint are representative members of the class and that they have established sufficient financial resources to be certified to represent the class.

### IV. Conclusion.

We have reviewed the remaining issues raised by Microsoft and find them to be without merit. We conclude that the district court did not abuse its discretion in certifying the two plaintiff classes. Therefore, we affirm.

**AFFIRMED.**

---

1. The new Iowa Rules of Professional Conduct were adopted April 20, 2005, and take effect July 1, 2005.