# IN THE COURT OF APPEALS OF IOWA

No. 18-1092
Filed July 24, 2019

**ANTHONY ROLAND,**
        Plaintiff-Appellee,

**vs.**

**ANNETT HOLDINGS, INC.,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Karen Romano, Judge.


        A trucking company appeals the district court's grant of class certification to injured drivers. **AFFIRMED AND REMANDED.**


        Sasha L. Monthei of Smith Mills Schrock Blades Monthei, P.C., Cedar Rapids, for appellant.

        Matthew R. Denning, Christopher D. Spaulding, and Nicholas L. Shaull of Spaulding, Berg & Schmidt, P.L.C., Des Moines, for appellee.


        Heard by Tabor, P.J., and Mullins and Bower, JJ. Gamble, S.J., takes no part.

**TABOR, Judge.**

The district court certified a class action involving dozens of truck drivers who allege their employer violated their rights under the workers' compensation act. The trucking company appeals. Finding no abuse of discretion, we affirm the class certification ruling.

## I.    Facts and Prior Proceedings.

The work-related injury suffered by Anthony Roland planted the seed for this class action. In October 2013, Roland started work for Annette Holdings, LLC[1] as an over-the-road truck driver. Roland lived in Oxford, Alabama, 897 miles away from Annett Holdings's headquarters in Des Moines. Annett Holdings requires all of its drivers, as a condition of their employment, to sign a Memorandum of Understanding (MOU). The MOU provides:

> [A]s a condition of your employment with [Annett Holdings], you acknowledge and agree that [Annett Holdings] may require you to temporarily relocate to Des Moines, Iowa, for modified duty work in the event you suffer a work injury. Iowa Law allows Annett Holdings to suspend workers' compensation benefits to an injured worker if an injured worker fails to accept and work in the modified duty position offered by Annett Holdings . . . .
> 
> . . . .
> Because drivers agree to be away from home as an essential function and an agreed upon term of their employment with Annett Holdings, injured workers are expected to temporarily relocate and perform their modified duty work in Des Moines, Iowa, irrespective of your state of residence. The temporary relocation will include staying away from your home for up to two weeks at a time. By accepting employment with [Annett Holdings], you acknowledge there is nothing you are aware of which would prevent you from temporarily relocating to Des Moines, Iowa for up to two weeks at a time to

---

[1] Annett Holdings is an Iowa trucking company that also does business as TMC Transportation. In this opinion, we will call the company Annett Holdings.

perform modified duty work assignments in the event you suffer a work injury.

After less than a year on the job, Roland injured his elbow while working in Indiana. Consistent with the MOU, after preliminary treatment in Indiana, Annett Holdings assigned Roland to the modified-duty program in Des Moines. The company transferred Roland's medical care to Des Moines to accommodate the modified-duty work program. Dissatisfied with the medical care he was receiving in Des Moines, Roland asked Annett Holdings to authorize treatment by an orthopedic surgeon in Alabama. Annett Holdings agreed. In May 2014, after undergoing elbow surgery in Alabama, Annett Holdings again assigned Roland to modified-duty work. The company again compelled him to relocate to Des Moines and to forgo follow-up care in Alabama.

In June 2014, Roland petitioned the Iowa Workers' Compensation Commission seeking alternate medical care in Alabama instead of Des Moines. The deputy commissioner concluded the MOU functionally deprived Roland of reasonable medical care. In granting Roland's petition, the commissioner explained:

> The agreement signed by Roland is contrary to the law and case law of Iowa because it attempts to use an agreement to relieve the employer from part of its liability to provide reasonably suited treatment for the injury without undue inconvenience to the employee under [c]hapter 85. The agreement appears to be an attempt to either avoid or eliminate both the "reasonable" and "undue inconvenience" clauses in Iowa Code section 85.27(4).

Annett Holdings sought judicial review and the district court affirmed.

Annett Holdings then appealed, and our court affirmed, finding substantial evidence supported the agency's conclusion the MOU, as applied to Roland,

violated Iowa Code section 85.18 (2013). *Annett Holdings, Inc. v. Roland*, No. 15-0043, 2016 WL 541265, at *6 (Iowa Ct. App. Feb. 10, 2016).

Less than a week after our decision, Roland sued Annett Holdings on behalf of himself and others similarly situated. He cited the company's continued attempts to compel him to travel to Des Moines for the light-duty work program despite judicial direction otherwise. Roland alleged Annett Holdings acted in bad faith and violated his statutory rights and those of similarly situated employees. Roland sought compensatory and punitive damages.[2] Roland's petition asked the district court to certify the matter as a class action.

The district court held a hearing on the class certification in April 2018. At the hearing, Roland's attorney explained that following a discovery conference, counsel for Annett Holdings stipulated the prospective class consisted of more than forty drivers who signed the same MOU. All the drivers had workers' compensation claims and were compelled to travel to Des Moines for the light-duty work program. Despite the company's stipulation to the prospective class membership, Annett Holdings resisted the motion to compel and moved to decertify the class action.

In a May 2018 order, the district court decided Roland and the other drivers met the requirements for class certification. Annett Holdings timely appealed the court's certification of the class. Our supreme court granted a stay of the district court's proceedings until conclusion of this appeal.

---

[2] Roland sought damages for (1) deprivation of healing period benefits, permanent partial disability benefits, medical benefits, and reasonable and necessary medical care; (2) loss of time traveling to and from Des Moines; (3) deprivation of statutory rights; and (4) pain and mental distress associated with a deprivation of statutory rights.

## II.     Scope and Standard of Review

We review a district court's certification of a class action for an abuse of discretion. *Kragnes v. City of Des Moines*, 810 N.W.2d 492, 497–98 (Iowa 2012). "Our class-action rules are remedial in nature and should be liberally construed to favor the maintenance of class actions." *Comes v. Microsoft Corp.*, 696 N.W.2d 318, 320 (Iowa 2005).

To warrant reversal, the grant of class certification must be unreasonable. *Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 113 (Iowa 2017). We affirm if the district court "weigh[ed] and consider[ed] the factors and [came] to a reasoned conclusion as to whether a class action should be permitted for a fair adjudication of the controversy." *Id.* (quoting *Anderson Contracting, Inc. v. DSM Copolymers, Inc.*, 776 N.W.2d 846, 848 (Iowa 2009) (alterations in original)). At this stage of the litigation, Roland carries a "light" burden in establishing the elements for class certification. *See id.* at 114.

## III.    Analysis

Class certification finds its source in our rules of civil procedure. Iowa Rule of Civil Procedure 1.262 sets forth three requirements: (1) the class must be so numerous as to render impracticable joinder of all parties, and there is question of law or fact common to the class; (2) class certification would promote the fair and efficient adjudication of the controversy; and (3) the representative parties will fairly and adequately protect the class's interests.

On the first requirement, Annett Holdings concedes the numerosity prong but argues Roland did not show the existence of a question of law or fact common to the class. Annette Holdings does not challenge the third element but does

contest one aspect of the second requirement—the promotion of a fair and efficient adjudication of the controversy.

That second class-certification requirement finds its contours in Iowa Rule of Civil Procedure 1.263. That rule delineates thirteen factors for courts to consider in determining whether certification would promote fair and efficient adjudication of a given controversy. Annett Holdings disputes just one of the thirteen considerations—"[w]hether common questions of law or fact predominate over any questions affecting only individual members." [3] *See* Iowa R. Civ. P. 1.263(1)(e).

---

[3] The twelve additional considerations include:

   a. Whether a joint or common interest exists among members of the class.
   b. Whether the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for a party opposing the class.
   c. Whether adjudications with respect to individual members of the class as a practical matter would be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.
   d. Whether a party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class as a whole.
   . . . .
   f. Whether other means of adjudicating the claims and defenses are impracticable or inefficient.
   g. Whether a class action offers the most appropriate means of adjudicating the claims and defenses.
   h. Whether members who are not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions.
   i. Whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding.
   j. Whether it is desirable to bring the class action in another forum.
   k. Whether management of the class action poses unusual difficulties.
   l. Whether any conflict of laws issues involved pose unusual difficulties.
   m. Whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.

Iowa R. Civ. P. 1.263(1).

Those thirteen factors balance two overarching considerations: "achieving judicial economy by encouraging class litigation while preserving, as much as possible, the rights of litigants—both those presently in court and those who are only potential litigants." *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 45 (Iowa 2003) (quoting *Vignaroli v. Blue Cross of Iowa*, 360 N.W.2d 741, 743 (Iowa 1985)). The district court has broad discretion to weigh those thirteen factors in deciding class certification. *Freeman*, 895 N.W.2d at 119.

We address the two arguments raised by Annette Holdings in turn.

## A. Common Question of Law or Fact

Annett Holdings contends the district court abused its discretion in certifying the class because the case does not present a common question of law or fact. The company asserts the administrative appeal did not declare the MOU invalid on its face but rather found it violated Roland's statutory rights. From that premise, Annett Holdings argues Roland has not shown the class members share a common injury because simply requiring drivers to sign the MOU does not violate the workers' compensation statute. We are unpersuaded by the company's contention.

To satisfy the commonality requirement, a litigant must present a question of law or fact common to class members. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (explaining employees' claims "must depend upon a common contention").[4] The complaints must arise out of a "common nucleus of operative facts" to establish commonality, but all claims need not be exact replicas of one

---

[4] We rely on federal authorities construing similar provisions of the federal rule on class certification to interpret our state counterpart. *See Freeman*, 895 N.W.2d at 116.

another. *Freeman*, 895 N.W.2d at 119. Phrased differently, in establishing commonality the proponent must prove all members of the purported class seek to remedy a common legal grievance. *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 368 (Iowa 1989).

Here, the district court reasoned: "The determination of whether the MOU violated statutory rights is common to all proposed class members." The court acknowledged "[t]he nature and amount of damages may differ for each class member." But, relying on *Freeman*, the court determined: "the central factual basis is the MOU [violates] section 85.18, and thus, the plaintiff's theory presents a common nucleus of operative fact."

In challenging the district court's conclusion on appeal, Annett Holdings relies on language in *Dukes* that the commonality requirement "does not mean merely that [the class members] have all suffered a violation of the same provision of law." 564 U.S. at 350. Applying that caution to these facts, Annett Holdings asserts not every truck driver in the purported class suffered the same—or any— injury from signing the MOU.[5] Thus, in the company's view, Roland has not met the commonality requirement.

Although the *Dukes* quote may appear instructive at first glance, Annett Holdings overlooks the glaring differences between the situation there and ours here. The *Dukes* plaintiffs alleged Wal-Mart engaged in discriminatory promotion policies and sought certification of a class including all women employed by Wal-

---

[5] Annett Holdings obtained affidavits from several employees injured on the job and allegedly opted to receive treatment in Des Moines, attempting to show no common injury among the purported class members.

Mart nationwide since 1988. *Id.* at 346. As it cautioned against finding commonality based on violations of a broad civil rights law, the court quipped: "Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once." *Id.* at 350. The Supreme Court held because the plaintiffs did not identify a particular employment practice connecting their nationwide claims, they failed to present a common question of law or fact supporting class certification. *Id.* at 359.

By contrast, Roland identified a legal grievance shared by the members of the prospective class—the company's use of the MOU to deny benefits to injured workers in violation of Iowa Code section 85.18. That common contention was "capable of classwide resolution," as described in *Dukes. Id.* at 350. And that common contention does not disappear even if some employees consented to receiving their medical care in Des Moines.

That allegation of employee consent is not our concern at this point. The company's push to show not all members of the class suffered the same injury takes us down the wrong path. In looking for a common question of law or fact, courts rarely inquire into the merits of each individual claim. *Vignaroli*, 360 N.W.2d at 745. Certification does not hinge on showing the plaintiffs can ultimately prevail on the merits. *Id.*

Imagine our court considering whether all of the truck drivers had viable legal claims against Annett Holdings for enforcing the MOU; that would require the district court to have inquired into the merits of the individual lawsuits. *See*

*Martin*, 435 N.W.2d at 368. "Appropriately, the trial court's certification ruling does not address the merits of any class member's cause of action." *Id.*

At this class-certification stage, it is premature to assess whether the alleged injuries did in fact occur. *Id.* Roland's complaint alleges circumstances, such as signing the Annett Holdings MOU and suffering work-related injuries, experienced by all members of the class, which created a common grievance. The district court did not abuse its discretion in finding a common question of law or fact among all members of the purported class.

### B. Fair and Efficient Administration of Justice—Predominance

Annett Holdings next claims class certification was improper because individual questions predominate over those common to the class. *See* Iowa R. Civ. P. 1.263(1)(e).[6] The company asserts individualized proof will be necessary to show the MOU is illegal as applied to each member of the class. Further, it claims the damages sought are highly individualized. Given these distinctions, Annett Holdings argues, the individual issues overshadow the common questions. We are not convinced by this argument that the district court abused its discretion in finding a unified proceeding would be a fair and efficient means to decide the truck drivers' common claims.

---

[6] Our supreme court has emphasized the district court's broad discretion to weigh all thirteen factors in deciding class certification under rule 1.263(1). *Comes*, 696 N.W.2d at 322. Courts would often find some criteria tilting against certification and some in its favor. *Id.* Employing its broad discretion, the district court must "weigh the competing factors and determine whether a class action will provide a fair and efficient adjudication of the controversy." *Id.* Thus, even if Annett Holdings is correct in its assertion that the predominance factor weighs against certification, that eventuality does not preclude affirming the certification because the other factors weigh heavily in support of allowing the class action to go forward. While the parties focused only on the predominance factor, the court considered all of the rule 1.263(1) criteria and concluded "a class action is the most appropriate means for fair and efficient adjudication of the controversy in this case."

The predominance inquiry requires us to examine the difficulties that could crop up in managing a class action. *Freeman*, 895 N.W.2d at 118. We look pragmatically at whether one or more central issues are common to the class, or in other words, predominate the litigation. *See Luttenegger v. Conseco Fin. Servicing Corp.*, 671 N.W.2d 425, 437 (Iowa 2003). Not all the claims need to be "carbon copies" of each other. *Id.* Roland can satisfy the predominance requirement by pointing to "generalized evidence which proves or disproves an element on a simultaneous, classwide basis, since such proof obviates the need to examine each class member's individual position." *See Freeman*, 895 N.W.2d at 119 (quoting *Vos*, 667 N.W.2d at 45).

That generalized evidence is the legality of the MOU, properly recognized by the district court as central to each member's claim. Even if individual class members may offer evidence specific to their own injuries and what medical treatment was reasonably necessary, the elephant in the room will continue to be the MOU and its conflict with chapter 85.[7] "Because this case involves alleged statutory violations and damages common to all class members, the district court did not abuse its discretion by finding that common issues predominate." *See Comes,* 696 N.W.2d at 323.

The same reasoning applies to Roland's bad-faith claim, where he asserts Annette Holdings knew the MOU was being used to illegally deny workers' compensation benefits and continued to enforce the contract anyway. *See Brown*

---

[7] The same logic applies to damage calculations. Individualized damage calculations are not fatal to a class certification if a class action promotes the resolution of a common and significant issue. *Luttenegger*, 671 N.W.2d at 437 (noting a variation in damage amounts due each party does not require termination of the class action).

*v. Liberty Mut. Ins. Co.*, 513 N.W.2d 762, 763 (Iowa 1994). Each member's proof of enforcement may vary, but all that evidence funnels into establishing the common bad-faith elements that Annette Holdings was using the MOU to deny workers' compensation benefits without a reasonable basis. *See id.*

During oral argument, Annett Holdings maintained this case is analogous to *Vos* in that the individual inquiries necessary to resolve the complaints predominate over common questions. *See* 667 N.W.2d at 54. In that case, the plaintiff-policyholders alleged Farm Bureau insurance agents "engaged in a pattern of deceptive practice in connection with the sale of whole life and universal life policies." *Id.* at 39. They sued for breach of contract, negligent misrepresentation, common law fraud, fraudulent inducement, and breach of fiduciary duty. *Id.* at 40. The district court first certified the class but after nearly two years of discovery, decertified the class upon defendants' motion. *Id.* at 41, 44. Our supreme court upheld the decertification, concluding the district court did not abuse its discretion in finding no evidence supported plaintiffs' claims of company-wide deception, and without a universal practice, individual issues would predominate over those common to the group. *Id.* at 49.

Even beyond the merits of the predominance inquiry, Roland's case is distinguishable for two reasons. First, the *Vos* court had the benefit of nearly two years of discovery before concluding the plaintiffs' theory of uniform deception was not viable. *Id.* at 41. By contrast, the parties here have yet to engage in discovery. If further development of the record reveals the class claims require more individualized proof than at first appeared, the district court may decertify the class, if appropriate. *See Vos*, 667 N.W.2d at 46.

Second, the *Vos* court reviewed the decertification for an abuse of discretion. *Id.* at 44. The court recognized the "broad discretion" the district court enjoys in determining whether to decertify a class, and it therefore conducted a limited review. *Id.* Had the district court declined to decertify the class, the court may well have upheld that decision. *See Martin*, 435 N.W.2d at 369 ("Whether or not we agree with the decision arrived at by the trial court is not the issue. The issue is one of abuse of discretion. We find no such abuse.").

Unlike the decentralized representations at issue in *Vos*, here the claims stem from a single source. As the district court explained: "A central issue common to the proposed class is the lawfulness or validity of the MOU as it relates to the light duty work and medical care provided in Iowa. This common question clearly predominates over any questions, such as the amount of damages, affecting only individual members." The district court properly exercised its discretion in rejecting Annett Holdings's predominance argument.

Finding no abuse of discretion in the district court's certification of the class action, we affirm the interlocutory order and remand for further proceedings.

**AFFIRMED AND REMANDED.**